EUGENE W. STETSON, JR. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, JS.

Argued April 13—decided June 4, 1965

*Gregory C. Willis,* with whom was *J. Steven Rollings,* for the appellant (plaintiff).

*F. Michael Ahern,* assistant attorney general, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Walter T. Faulkner,* assistant attorney general, for the appellee (defendant).

COMLEY, J. This is an appeal by the plaintiff from the assessment of a use tax against him by the defendant arising out of the purchase by the plaintiff in Massachusetts of a racing sloop named the Banda. The case was referred to a state referee, whose amended report was accepted by the court, and judgment thereon was rendered for the defendant.

The report, which is not subject to further correction, discloses the following facts: During 1957 and 1958, the plaintiff was a resident of Westport, Connecticut, with a summer home in South Dartmouth, Massachusetts. On May 16, 1957, he purchased and took delivery of the Banda in South Dartmouth from The Concordia Company, Inc., a dealer in and importer of foreign boats. The Concordia Company had registered the boat in its name with the United States Coast Guard in the port of Boston on May 15, 1957, but, on May 17, 1957, the day following the sale, the plaintiff, acting through the Concordia Company, made application for the registration of the boat in his name at the port of New London, and, on May 24, 1957, that registration was issued. The referee, adopting the testimony of the lieutenant commander in charge of the Marine Inspection Office in New London, found that registration in New London "would indicate that principal usage would be Connecticut." This registration was accepted by the plaintiff.

In the summer of 1957, the Banda was raced off the coasts of Massachusetts, Connecticut, Rhode Island and New York. During that season, it was at the Concordia Company shipyard a great deal and also at such other places outside of Massachusetts as Newport, Rhode Island, and Oyster Bay and Cold Spring Harbor in New York. The plaintiff also maintained a mooring at the Pequot Yacht Club in Southport, Connecticut, not far from his Connecticut residence. Whenever he was in Long Island Sound, he would go to the Pequot Yacht Club for supplies, and sometimes, when he was in New York, the boat would lie there for a week at a time.

During the fall and winter of 1957-58, the Banda was stored at the Concordia Company shipyard.

In May, 1958, it was reconditioned and recommissioned at South Dartmouth, and, through the ensuing summer, it was used in much the same way as in the preceding year. A property tax on the boat for the year 1958 was assessed by the town of South Dartmouth.

In November, 1958, the plaintiff sold the Banda to a resident of the state of New York, who registered it in the port of New York. The use tax which is the subject of this litigation was levied against the plaintiff in October, 1960.

The pertinent statutes relating to this tax are printed in the footnote.[1] The nature of this tax was discussed in *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 299, 57 A.2d 128, where it was said: "The use tax is doubtless complementary to the sales tax, but its purpose goes beyond protecting sellers within the state from the unfair competition which would result if the purchase of the articles outside state bounds was not subject to tax-

---

[1] "Sec. 12-411. THE USE TAX. (1) IMPOSITION AND RATE. An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from any retailer for storage, use or other consumption in this state at the rate of three per cent of the sales price of the property." (The rate was changed to three and one-half percent effective July 1, 1961, by Public Acts 1961, No. 574, § 3.)

"Sec. 12-411. . . . (13) PRESUMPTION OF PURCHASE FROM RETAILER. It shall be presumed that tangible personal property shipped or brought to this state by the purchaser was purchased from a retailer for storage, use or other consumption in this state."

"Sec. 12-407. DEFINITIONS. . . . (4) 'Storage' includes any keeping or retention in this state for any purpose except sale in the regular course of business or subsequent use solely outside this state of tangible personal property purchased from a retailer. (5) 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business."

ation, and beyond affording a means of preventing the evasion of the sales tax by such purchases. It applies, for example, as regards articles bought outside the state although they are not purchasable within it. By the use tax, a broader basis of taxation is established by the inclusion of purchases made without as well as within the state."

It is apparent from a reading of General Statutes § 12-411 (1) that three conditions must exist to create taxability. First, there must be a purchase of tangible personal property; second, the purchase must have been made for the purpose of storage, use or other consumption in this state; and, third, there must have been such storage, use or other consumption.

Here, there can be no doubt about the existence of the first element. The plaintiff concedes that he made the purchase of the boat in South Dartmouth, Massachusetts. We must next determine whether that purchase was made for the purpose of storage, use or other consumption in this state. This determination involves an element of intent. Whether or not the presumption created by General Statutes § 12-411 (13) applies to the facts in this case is unnecessary for us to decide. The controlling factor indicating the existence in the plaintiff's mind of such an intent is the registration of the boat, one day after its purchase, in the port of New London upon an application signed by the plaintiff himself. It is specifically found that this registration "would indicate that principal usage would be Connecticut." The finding must stand, and it furnishes ample support for the conclusion that the plaintiff purchased the boat for use in Connecticut, whatever may have been his intention concerning usage outside this state.

The final question is whether there was, in fact, a "use or other consumption in this state." It is important to note that the statute does not require exclusive usage in Connecticut. Nor does it require principal or major usage. The question is not whether the boat was used more in Connecticut than it was in Massachusetts. "Use" is defined in § 12-407 (5) as "the exercise of any right or power over tangible personal property incident to the ownership of that property." Even a very brief and limited use of that nature is sufficient to justify the imposition of the tax. *United Aircraft Corporation* v. *Connelly,* 145 Conn. 176, 182, 140 A.2d 486. There was ample basis for the finding that the Banda was used in this state.

There is no error.

In this opinion the other judges concurred.